**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 17-50-DLB-CJS**

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**

**vs.**                                        **ORDER**

**RODNEY LAWRENCE JACKSON**                                   **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant's Motion to Reconsider the Court's previous Memorandum Opinion and Order (Doc. # 60) denying Defendant's Motion to Suppress. (Doc. # 67). The Government has now filed its response (Doc. # 69), and Defendant's Motion is ripe for the Court's review. For the reasons set forth below, the Motion is **denied**.

**I.     ANALYSIS**

In his Motion to Reconsider (Doc. # 67), Defendant asserts that the Court should reconsider its September 18, 2018 Memorandum Opinion and Order (Doc. # 60) denying his Motion to Suppress (Doc. # 15). Defendant's Motion centers on his disagreement with the Court's application of the inevitable discovery doctrine. (Doc. # 67 at 2) ("Defendant argues that [the] Court's conclusion in §C of the Court's Opinion and Order is incorrect"). He argues that the Court got it wrong when it found that, even if Officer Ullrich's search of Defendant's person were unconstitutional, the inevitable discovery doctrine would apply based upon the marijuana located during the officer's lawful search of Defendant's vehicle, and the methamphetamine found on Defendant's person would

have inevitably been located in the course of Defendant's subsequent arrest for marijuana possession. Defendant urges the Court to retract its application of the doctrine, and to then reach the merits of his argument—set forth in his Memorandum in Support of Motion to Suppress Evidence (Doc. # 47)—that Officer Ullrich's search of Defendant's person violated the constitutional standard for strip searches set forth by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979).

Defendant's Motion fails for three reasons. First, it is procedurally improper. Second, the Court properly applied the inevitable discovery doctrine. Finally, the search of Defendant's person was not an unconstitutional strip search pursuant to *Bell v. Wolfish*. The Court will address each of these reasons in turn.[1]

### A. Defendant failed to meet the standard for reconsideration.

Defendant's Motion to Reconsider is procedurally improper. The Federal Rules of Criminal Procedure make no provision for a motion to reconsider. *See United States v. Baker*, No. 09-20068, 2011 WL 13142576, at *2 (W.D. Tenn. Dec. 1, 2011); *United States v. Hopewell*, No. 08-cr-065, 2009 WL 1026452, at *1 (S.D. Ohio Apr. 15, 2009). "[C]ourts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)."[2] *United States v. Jarnigan*, No. 3:08-CR-7, 2008 U.S. Dist. LEXIS 101768, at *2 (E.D. Tenn. Dec. 17, 2008). Pursuant to this standard, a court may grant

---

[1] The Court incorporates herein by reference the previous Findings of Fact set forth in its September 18, 2018 Memorandum Opinion and Order (Doc. # 60 at 3-7).

[2] Because Defendant does not seek to introduce new evidence, but merely disagrees with the conclusion of the Court, the subject Motion is not properly construed as a motion to reopen a suppression hearing. However, even if it were, the decision to reopen a suppression hearing is left to the sound discretion of the Court. *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds, Carter v. United States*, 543 U.S. 1111 (2005).

a motion to alter or amend judgment only if there was "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2009) (internal citations omitted). A motion to reconsider "should not be used to revisit issues already addressed" and "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015). *Accord Baker*, 2011 WL 13142576, at *2 ("[A] motion for reconsideration should not be used to reiterate arguments that have been made previously.") (citing *United States v. Diaz*, No. 09-CR-037, 2010 WL 5677193, at *7 (N.D. Ga. Dec. 30, 2010)).

Here, Defendant seeks to relitigate a losing argument based on his disagreement with the Court's ruling. He cannot point to a change in the law or new evidence to justify his Motion. Instead, he asks the Court to reconsider its prior Memorandum Opinion and Order because he believes it was in error. But Defendant does not plow new ground, and merely resurrecting old arguments does not persuade the Court that its prior ruling was incorrect. Upon the final resolution of this case, if Defendant is dissatisfied and still believes that it was an error to deny his Motion to Suppress, he is free to appeal this Court's decision to the Sixth Circuit. Until such time, Defendant's requests for relief are procedurally improper.

### B. The Court properly applied the inevitable discovery doctrine.

Defendant next argues that the Court erred in concluding that the evidence seized from the search of Defendant's person would inevitably have been discovered during a search incident to arrest. (Doc. # 67 at 2) (citing Doc. # 60 at 17). Defendant does not

dispute the Court's analysis pursuant to the inevitable discovery doctrine, but rather disputes the Court's underlying factual finding that the search of Defendant's vehicle yielded marijuana. *See* (Doc. # 67 at 2) ("The problem with this is there is only a mention of marijuana and there is no marijuana charge that was filed and there is no drug test for the marijuana to believe that any marijuana was ever found."). Defendant offers nothing in support of this conjecture.

The Court's review of the record and the evidence presented at the evidentiary hearing supports the Court's finding that the officers found and seized loose marijuana on the floor of Defendant's vehicle, giving them probable cause to arrest the Defendant. *See, e.g.*, (Doc. # 46 at 27, 36, 60; Govt. Ex. 2 at 05:43:19-05:46:59). The record shows that, contrary to Defendant's assertion in his Motion to Reconsider that "there is no marijuana charge that was filed," defense counsel's own cross-examination of Officer Ullrich reveals that "the citation goes on to say he's charged with trafficking and possession of marijuana." (Doc. # 46 at 34-36; Doc. # 45 at Def. Ex. 1; Doc. # 69-1 at 1). Indeed, the citation shows that Defendant was charged with, *inter alia*, possession of marijuana in violation of Kentucky Revised Statute 218A.1422, a Class B misdemeanor under Kentucky law punishable with up to a forty-five-day term of incarceration. (Doc. # 69-1 at 1); Ky. Rev. Stat. § 218A.1422. Defense counsel did not challenge the veracity of the marijuana charge during the evidentiary hearing, focusing instead on the timing of the vehicle search. *See* (Doc. # 46 at 36).

The search of Defendant's vehicle resulted in the seizure of marijuana. This permitted the officers to arrest the Defendant and perform a full search of his person. Defendant has offered no new evidence or authority to warrant reconsideration or alter

the Court's finding on this point. Accordingly, Defendant's arguments are clearly meritless.

### C. The search of Defendant's person was not an unconstitutional strip search pursuant to *Bell v. Wolfish*.

Finally, Defendant argues that "the Court failed to address the *Bell v. Wolfish* Guidelines in determining whether this was a strip search or a type of search that is prohibited by the constitution" pursuant to the framework set forth by the Supreme Court in *Bell*. (Doc. # 67 at 1) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Specifically, Defendant argues that the search was unreasonable because it occurred on the street in public view and extended in scope to a search inside his pants and underwear. (Doc. # 47 at 3-4). In support of his argument, Defendant relies on three distinguishable cases. *See* (Doc. # 67 at 1) (citing *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983)); (Doc. # 47 at 3-4) (citing *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001); *United States v. Ford*, 232 F. Supp. 2d 625 (E.D. Va. 2002)).

Defendant fails to grasp that, because the inevitable discovery doctrine applies, this line of argument is irrelevant for purposes of the suppression motion. Nonetheless, the Court turns briefly to the substance of Defendant's argument as an alternative ground, because Defendant's position is "clearly without merit and doing so may facilitate future proceedings." *See United States v. Elenniss*, 729 F. App'x 422, 428 (6th Cir. 2018). Even if Defendant had made a showing that he was entitled to review on the merits of his argument, Officer Ullrich's search of Defendant's person—namely, his look-in and retrieval of methamphetamine from Defendant's underwear—was not an unconstitutional

strip search pursuant to *Bell v. Wolfish*, 441 U.S. 520.[3]

The relevant inquiry here is whether Officer Ullrich's search of Defendant's person was reasonable in its scope and manner of execution, balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *United States v. Doxey*, 833 F.3d 692, 704 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2204 (2017). This balancing test originates from *Bell*, where the Supreme Court confronted for the first time the issue of strip searches in the corrections context. *Bell*, 441 U.S. 520. In *Bell*, the Supreme Court held that a federal detention center's blanket policy of conducting a visual body cavity inspection of all detainees returning from a "contact visit" did not violate the Fourth Amendment. *Id.* at 558, 560. Along with its holding, the Supreme Court set forth "general principles" to guide the analysis of searches conducted in the corrections setting. *See id.* This has generally culminated in a three-step analysis. *Sumpter v. Wayne Cty.*, 868 F.3d 473, 482 (6th Cir. 2017). First, courts determine the nature of the intrusion, examining the scope, manner, and location of the search. *Id.* (internal citations omitted). Second, courts evaluate the need for the search, giving due deference to the correctional officer's

---

[3] For the purposes of completeness, the Court notes that two "searches" of Defendant's person occurred. The first search—Officer Lusardi's frisk of Defendant's person prior to the search of Defendant's vehicle—was not constitutional. Officer Lusardi testified that "[w]hen [Defendant] got out of the vehicle, yes, sir, we always pat down for weapons." (Doc. # 46 at 53). On its face, Officer Lusardi's practice of conducting a pat-down *every time* he conducts a vehicle search fails to comport with the Fourth Amendment. When an officer conducts a traffic stop, he is permitted to make a limited search of the individual's "outer clothing for weapons . . . to protect both the officer and the public." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 23-24 (1968)). Such pat-downs are necessary for an officer's safety and do not violate the Fourth Amendment *so long as the officer has a reasonable suspicion that the suspect is armed and dangerous. See United States v. Pendleton*, No. 3:15-cr-116-CRS-4, 2017 WL 2722305, at *6 (W.D. Ky. June 23, 2017). Here, the evidence does not support a finding that Officer Lusardi initiated the pat-down because of a reasonable belief that the Defendant was armed and dangerous; accordingly, he conducted an unlawful search of the Defendant's person in violation of the Fourth Amendment. *United States v. Flores*, 30 F. Supp. 3d 599, 605 (E.D. Ky. 2014). However, as no evidence was found during the search, and pursuant to the application of the inevitable discovery doctrine, it is irrelevant. *See* discussion, *supra*; *see also* (Doc. # 60 at 17-18).

exercise of his discretionary functions.  *Id.*  Third, courts determine whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion.  *Id.*

Turning first to the nature of the intrusion, "[a]n intrusive search is not necessarily an unreasonable one."  *Id.* at 483.  The cases relied upon by Defendant demonstrate that the level of intrusion at issue here did not rise to the level of the invasive searches that courts have found to be unconstitutionally unreasonable.  In *Ford*, for instance, the defendant was stopped along a busy highway during rush hour; he was subjected to a "full-blown body cavity search," including a search inside his rectum, in full view of a large number of members of the public.  *Ford*, 232 F. Supp. 2d at 625-27, 630.  Likewise, in *Amaechi*, a civil rights action brought pursuant to 42 U.S.C. § 1983, a male police officer subjected a female to a "highly intrusive" strip search "without any apparent justification" based upon a "two-day-old misdemeanor noise violation" and "publicly expos[ed] a significant portion of her naked lower body" while "touching and penetrating Amaechi's genitalia and kneading her buttocks with his ungloved hand" on the street in front of her family, the public, and other officers.  *Amaechi*, 237 F.3d at 361.  Finally, the Supreme Court commented in passing in *Lafayette* that officers normally would not be permitted to *strip search* an arrested person while on the street.  *Lafayette*, 462 U.S. at 645-46.

In contrast, the search of Defendant's person was reasonable and did not rise to the level of unreasonableness evident in *Amaechi* and *Ford*.  Here, the video and testimonial evidence establish that, unlike in *Lafayette*, Defendant was not subjected to a strip search.  Unlike the plaintiff in *Amaechi*, who was forced to expose a significant portion of her naked lower body, here during Ullrich's retrieval of the item, Defendant's

buttocks was exposed for a few seconds, but mostly covered by his long white shirt. (Doc. # 60 at 6). Pubic hair was also briefly visible, but his genitals were not exposed to view. *Id*. Moreover, the Defendant voluntarily exposed more skin sitting on the curb while waiting to be searched than the police actually exposed during the search; his pants were belted several inches below his hips such that a large swathe of blue underwear and a portion of his buttocks were already visible between his shirt and pants. *Id.*

Furthermore, unlike *Ford*, where the Eastern District of Virginia found the intrusion was significant when a full-blown strip search occurred along a busy highway during rush hour, the search at issue here occurred on a dark night at approximately 1:24 a.m. (Doc. # 60 at 3). There was little traffic on the street, and there were approximately four people observing from a distance of fifty or sixty feet, and two individuals looked out of their windows onto the scene. *Id.* at 6. Additionally, the search did not involve an unreasonable search inside Defendant's body. "Searches that intrude into the body implicate greater constitutional concerns." *Doxey*, 833 F.3d at 704. Here, unlike *Ford*, who was subjected to a "full-blown body cavity search," and *Amaechi*, whose genitals were penetrated, Defendant's pants were lowered and Officer Ullrich used his right hand to pull Defendant's pants straight out from his body, look in Defendant's pants, and then stuck his hand into Defendant's groin area, retrieving the package of methamphetamine within approximately five seconds. (Doc. # 60 at 6). The removal "did not require any further touching, intrusion, or probing into [Defendant's] body." *Doxey*, 833 F.3d at 705. The search necessarily involved intrusion, but did not rise to the level of unreasonable intrusion in *Ford* and *Amaechi*.

Turning to the second and third factors, giving due deference to the officer's exercise of his discretionary functions and weighing the need against the invasion, "the fact of [Defendant's] status" as someone on federal supervised release, *see* (Doc. # 46 at 21), "diminished his reasonable expectation of privacy and provided a strong justification for the search." *Doxey*, 833 F.3d at 705. Although removing the package from Defendant's underwear "was an invasion of privacy beyond that caused by a visual search, what occurred here was a constitutionally permissible search that was reasonable under the totality of the circumstances." *Id.* at 706. The manner of removal was permissible under the Fourth Amendment, and suppression of the methamphetamine found during the search of Defendant's person is not warranted. Accordingly, Defendant's Motion to Reconsider is meritless.

## II.    CONCLUSION

For these reasons, the Court concludes that reconsideration of its September 18, 2018 Memorandum Opinion and Order (Doc. # 60) is unwarranted. Accordingly,

**IT IS ORDERED** as follows:

(1)    Defendant's Motion to Reconsider (Doc. # 67) is **DENIED**; and

(2)    The period of time between October 1, 2018 (the filing of the motion for reconsideration) and the date of this Order, totaling ten (10) days, is **EXCLUDED** from the Defendant's speedy trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D)&(H).

This 11th day of October, 2018.



Signed By:

*David L. Bunning*

United States District Judge